```
 1                    IN THE UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF TEXAS
 2                            HOUSTON DIVISION

 3   _____
                                   )
 4   UNITED STATES OF AMERICA       )
                                    ) CRIMINAL ACTION NO.
 5   VS.                            ) 4:24-CR-298
                                    )
 6   EITHAN DAVID HAIM              ) 2:34 P.M.
     _____)
 7

 8                          STATUS CONFERENCE
                   BEFORE THE HONORABLE DAVID HITTNER
 9                   UNITED STATES DISTRICT JUDGE
                          NOVEMBER 15, 2024
10
     APPEARANCES:
11
     FOR PLAINTIFF:
12   MS. TINA ANSARI
     MR. TYLER STEPHONE WHITE
13   MS. LAURETTA D. BAHRY
     MS. JESSICA KATE FEINSTEIN
14   United States Attorney's Office
     1000 Louisiana, Suite 2300
15   Houston, Texas  77002
     (713)567-9598
16
     FOR DEFENDANT:
17   MR. RYAN KELLEY GOEB PATRICK
     HAYNES AND BOONE LLP
18   1221 MCKINNEY STREET, SUITE 4000
     Houston, Texas  77010
19   (713)547-2000

20   MS. MARCELLA C. BURKE
     Burke Law Group, PLLC
21   1000 Main Street, Suite 2300
     Houston, Texas  77002
22   (832)987-2214

23   MR. JEFFREY A. HALL
     Burke Law Group, PLLC
24   2001 L. Street N.W., Suite 500
     Washington, D.C.  20036
25   (832)968-7564
```

1  APPEARANCES CONTINUED:

2  **ALSO PRESENT:**
   MR. EITHAN HAIM

3
   **COURT REPORTER:**

4  Heather Alcaraz, CSR, FCRR, RMR
   Official Court Reporter

5  515 Rusk, Suite 8004
   Houston, Texas  77002

6  (713)250-5584

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
   Proceedings recorded by mechanical stenography, transcript

25 produced by computer.

```
1                              PROCEEDING
```

14:34:19  2           **THE COURT:**  All right.  Thank you.  Be seated.

14:34:33  3           The Court calls the case criminal matter 24-298,

4    United States versus Haim.  Who represents the government?

14:34:43  5           **MS. ANSARI:**  Yes.  Tina Ansari for the government,

6    Your Honor, along with --

14:34:48  7           **MS. FEINSTEIN:**  Jessica Feinstein.

14:34:56  8           **MR. WHITE:**  And Tyler White, Your Honor.

14:34:58  9           **THE COURT:**  All right.  And who represents the

10    defense, please?

14:35:01 11           **MR. PATRICK:**  Ryan Patrick --

14:35:03 12           **THE COURT:**  Hang on one second.  Let me get -- okay.

14:35:08 13           **MR. PATRICK:**  Ryan Patrick.  This is Jeff Hall,

14    Marcella Burke (indicating) --

14:35:14 15           **THE COURT:**  Where is Ms. Burke?

14:35:16 16           **MR. PATRICK:**  Right here (indicating) in the back.

14:35:17 17           And then Dr. Haim, sitting here at the table.

14:35:22 18           **THE COURT:**  Okay.

14:35:24 19           All right.  We're here for a status conference,

20    defendant's motion to dismiss and to strike -- and to strike

21    the, what is it -- well, we'll get to that in a minute.  I'm

22    just going to say Haim contends -- and I'm reading.  I've

23    prepared this.  You can see it.  Everything's highlighted and so

24    forth.

14:35:45 25           So pardon me for reading, but I'm going to do some

1    reading, and certainly, when you're speaking, I'm not going to

2    be reading anything.

14:35:52 3    All right.  Haim contends that the fatal drafting

4    errors in the superseding indictment, including references to

5    nonexistent statutory provisions and nonexistent crimes,

6    prejudice him, thus warranting dismissal.  Haim contends -- the

7    many problems and chaos that would arise from taking this to a

8    jury, contends that intensely factual questions with

9    excruciatingly specific evidence will simply not work,

10    basically.

14:36:25 11    All right.  Third, Haim contends the Court should

12    determine -- the Court should determine the meaning of the term

13    "without authorization" in the HIPPA statute to be in line with

14    the Supreme Court's view in this *Van Buren* case, in which the

15    Supreme Court interpreted the Federal Computer Fraud and Abuse

16    Act's authorization clause to be -- and I have this in quotes --

17    gates-up-or-down inquiry.

14:36:53 18    The first thing I want to do, I'm going to ask the

19    government a number of things, okay?

14:36:56 20    Ms. Ansari --

14:37:00 21    **MS. ANSARI:**  Your Honor, I'm going to defer to

22    Ms. Feinstein.

14:37:04 23    **THE COURT:**  No, I want you to talk.  You're the lead

24    lawyer in this.

14:37:06 25    **MS. ANSARI:**  Okay.

14:37:07  1          **THE COURT:**  You're the lead lawyer.  We've been

2     calling you.  We've had trouble getting in touch with you.  No,

3     you're the lead in this case.

14:37:15  4          Superseding the -- what is it, the errors only showed

5     up in the superseding indictment, all right?  The initial

6     indictment was filed -- and you can see I'm going down it now.

7     I have questions for the defense for sure, but I want to get

8     this thing cleaned up and get it moving, and that's what we're

9     here for.

14:37:33 10          That's why I granted your motion to come and have a

11    status conference.

14:37:38 12          Super- -- superseding indictment error.  The

13    government -- this is the first superseding -- the first one, we

14    didn't -- I looked at that.  We're doing it about the

15    superseding.

14:37:48 16          When we had a prior status conference, the government

17    mistakenly cites to a nonexistent subchapter XL of the HIPPA

18    statute instead of subchapter XI, okay?  And Haim says that this

19    vagueness means the government's error both misleads and

20    prejudices him, and the government admitted their error.  They

21    admitted it.  So, what is it, the superseding indictment

22    error -- there's another one.

14:38:21 23          Now, in the superseding indictment, the government

24    has -- they admitted it, and we had a superseding indictment.

14:38:28 25          Now, on the superseding indictment, the government

1  changed the languages -- language of charges two to four as

2  follows -- you changed it from the first go-round.  The original

3  indictment:  Haim notable -- is it Haim?  Haim knowingly and

4  without authorization did obtain and/or -- and these are the key

5  words -- wrongfully disclose individual identifiable health

6  information with the intent to cause malicious harm.

14:39:02 7  Well, when the superseding indictment -- that was the

8  original indictment.  That's the original language.  Superseding

9  came back, Haim notely [sic] -- what is it, knowingly and

10  without authorization did obtain and/or use individual

11  identifiable health information, and I -- I believe the

12  government probably admits it -- did admit its error.  Haim

13  argues that the term "use" is a nonexistent offense not in

14  written -- written into the criminal HIPPA statutes.

14:39:36 15  He also argues the word "use" is unlawfully

16  prejudicial surplusage that will confuse the jury and blur the

17  elements.

14:39:46 18  So that's why they're asking for the dismissal and/or

19  striking of the -- this -- of the indictment and everything

20  that's going on.

14:39:57 21  Also, the other problems we had with the lead

22  prosecutor was that you had a suspended license for a while, and

23  it's only when it was pointed out by the defense that I guess

24  you went back to the state bar and corrected it.  And, what is

25  it -- also, the government late disclosures.

14:40:17  1          On September 13th, 2024, the government disclosed

       2  that -- we had an initial trial date.  All of a sudden

       3  everything goes haywire on the date because the government

       4  disclosed the existence of additional discovery from Texas

       5  Children's Hospital on September 13th, 2024.  This discovery was

       6  given to Haim one month -- one month before the initial trial

       7  date.  That's why we had to kick it down the road a bit and why

       8  it's set, I think, for early in December.

14:40:49  9          So the first question I have for you, okay -- well,

      10  it's obvious that the government didn't proofread or review the

      11  superseding indictment to prevent these errors, but are you

      12  going to file another superseding indictment or what?

14:41:07 13          MS. ANSARI:  No, Your Honor --

14:41:08 14          THE COURT:  Then how are you going to go ahead with

      15  the word "use" when it's not in the statute?

14:41:13 16          MS. ANSARI:  Your Honor, we --

14:41:14 17          THE COURT:  How do you get around that?

14:41:16 18          MS. ANSARI:  Yes.  We agreed to strike that language

      19  in our response.

14:41:19 20          THE COURT:  You tell me.

14:41:19 21          MS. ANSARI:  Yes.  So we are happy to strike the word

      22  "use," Your Honor.

14:41:24 23          THE COURT:  So how are you -- how are you going to --

      24  what are you going to plead?  Where's the key language?

14:41:28 25          MS. ANSARI:  The key language that's in the statute,

1   Your Honor, if you can give me one moment...

14:41:38  2         *(Sotto voce discussion between Ms. Ansari and*

3         *Ms. Feinstein.)*

14:41:41  4         **MS. ANSARI:**  Yes.  So if we can go to Counts 2 through

5   4 in the indictment, if we just strike the word "and/or use," it

6   would be "did obtain."

14:41:50  7         **THE COURT:**  So what are you going to do?  Are you --

8   how can you just strike the -- a superseding indictment, change

9   the language?

14:41:58  10        **MS. ANSARI:**  We would like to then ask the Court for a

11  motion to strike the language.

14:42:01  12        **THE COURT:**  That's denied.

14:42:03  13        **MS. ANSARI:**  All right, Your Honor.  Then we would

14  like to just --

14:42:07  15        **THE COURT:**  What?

14:42:08  16        **MS. ANSARI:**  -- go with "did obtain" -- in the jury

17  charge "or did obtain."

14:42:13  18        **THE COURT:**  Hold it a second.  You have to go back to

19  the indictment --

14:42:16  20        **MS. ANSARI:**  It's and/or.

14:42:16  21        **THE COURT:**  -- right?

14:42:26  22        All right.  Right now, on the original one,

23  "wrongfully disclose," that's the language, correct?  Isn't that

24  in the statute?

14:42:34  25        **MS. ANSARI:**  Correct, Your Honor.

14:42:35 1          **THE COURT:**  All right.  "Use" doesn't even appear in

2      the statute that you filed in the -- and now you want to

3      correct -- you want to correct the indictment, without going

4      back and filing a superseding one, and, oh, just knock out the

5      word "use" that you've used, no pun intended, and what do you

6      want me to insert?

14:42:57 7          **MS. ANSARI:**  Nothing to insert; just to strike it,

8      Your Honor.

14:43:01 9          **THE COURT:**  Well, how do you -- how go you get the

10     elements there --

14:43:03 11         **MS. ANSARI:**  Well, the elements --

14:43:03 12         **THE COURT:**  -- of the indictment?

14:43:04 13         **MS. ANSARI:**  Yes, Your Honor.  The element is a person

14     who knowingly, in violation --

14:43:08 15         **THE COURT:**  Slow down.

14:43:08 16         **MS. ANSARI:**  -- obtains individually identifiable

17     health information relating to an individual.  Those words are

18     all in there, Your Honor.  So all the elements that are needed

19     for Section 2 of the statute are listed in the indictment.

20     There's just surplusage language, Your Honor.

14:43:29 21         **THE COURT:**  "Use" is surplusage?

14:43:31 22         **MS. ANSARI:**  Yeah.  It's not -- it's in the first

23     part -- it's in:  (Reading) Uses or causes to be used a unique

24     health identifier, as part one; obtains individual identifiable

25     health information --

14:43:42  1          THE COURT:  Okay.  Let me ask you this:  How come you

2    just change -- you took "wrongfully discloses" from the first

3    indictment, and all of a sudden now you're using "use," and you

4    want me to strike it -- or you want to strike it?

14:43:56  5          MS. ANSARI:  Your Honor, it is -- we're just agreeing

6    that we don't need it.  It's and/or use.

14:44:01  7          THE COURT:  Okay.  I believe -- we'll hear from the

8    defense on this point, but -- so you're saying, what, it's just

9    minor points?

14:44:09 10          MS. ANSARI:  Yes, Your Honor.

14:44:11 11          THE COURT:  All right.  What's your best case on it?

12   We've done research on that.

14:44:14 13      *(Sotto voce discussion between Ms. Ansari and*

14       *Ms. Feinstein.)*

14:44:19 15          MS. ANSARI:  I can get back to you on the best case,

16   Your Honor.  I'm not -- on what issue, on taking out "use"?

14:44:24 17          THE COURT:  On taking out "use" or that, if you don't

18   use the statute language, you substitute something for it, and

19   you just want to remove it from the indictment.

14:44:32 20          MS. ANSARI:  Your Honor, it does have the statutory

21   language in the indictment.  It's just an extra word.  It's

22   surplusage, Your Honor.

14:44:39 23          THE COURT:  Let me ask you this, though:  First

24   go-round, "wrongfully disclose" was in there, correct?

14:44:46 25      *(Sotto voce discussion between Ms. Ansari and*

1          *Ms. Feinstein.)*

14:44:49 2          **MS. ANSARI:**  Yeah.  We -- yes.  Correct, Your Honor.

3     We cleaned up the indictment because we were not focusing on the

4     disclosure.

14:44:53 5          **THE COURT:**  Well, that was what was brought up during

6     that first status conference --

14:44:57 7          **MS. ANSARI:**  Right.

14:44:57 8          **THE COURT:**  -- that led to the superseding indictment.

9     So you changed the original.

14:45:01 10          **MS. ANSARI:**  We -- originally, Your Honor, we were

11    only focusing on the obtaining part of the case.  We did include

12    "obtain and/or disclose," but we were not going to spend our

13    whole trial even on the disclosure.  So we didn't want to make

14    it a point.  We tried to amend the indictment to make it cleaner

15    and more narrow.

14:45:20 16          **THE COURT:**  Well, apparently, you didn't.

14:45:23 17          **MS. ANSARI:**  We feel we did, Your Honor.

14:45:24 18          **THE COURT:**  Well, you think that "use" ought to stay

19    in there?  What do you want?

14:45:28 20          **MS. ANSARI:**  We don't care if "use" is in there.  If

21    it makes defense happy, we're happy to strike it, Your Honor.

14:45:33 22          **THE COURT:**  Well, we'll see if it's absolute.  We'll

23    hear from them in a moment.

14:45:37 24          **MS. ANSARI:**  Okay.

14:45:38 25          **THE COURT:**  Okay.  Let me just go down through it.

14:45:47  1          All right.  So the government's not going to file a

2  second superseding indictment as far as you're concerned,

3  correct?

14:45:52  4          **MS. ANSARI:**  That is correct, Your Honor.

14:45:53  5          **THE COURT:**  And you're going to leave the first one in

6  place, and you want the ability to strike the word "use," right?

14:45:59  7          **MS. ANSARI:**  Yes, Your Honor.

14:46:00  8          **THE COURT:**  What's your authority for allowing someone

9  to do it?  Because, initially, I said no.  If you can show me

10  that you can do that routinely to keep that pleading alive -- I

11  mean, that the -- the second -- the superseding indictment alive

12  with it, I may reconsider.

14:46:17 13          **MS. ANSARI:**  Yes, Your Honor.

14:46:18 14          **THE COURT:**  Where is it?  How can you do that?

14:46:20 15          **MS. ANSARI:**  We do have plenty of case law showing

16  that the Court has plenty of authority to strike surplusage in

17  an indictment.

14:46:26 18          **THE COURT:**  Well --

14:46:26 19          **MS. ANSARI:**  I can get you the case law on it, if you

20  give us a moment, Your Honor, as we weren't anticipating this

21  exact question.

14:46:33 22          **THE COURT:**  Well, you know what the defense said.

23  They're coming in -- they want to strike all this.

14:46:38 24          **MS. ANSARI:**  Your Honor, we believe you do have the

25  authority to strike the language, if you so choose, Your Honor.

14:46:42  1              **THE COURT:**  All right.  Well, we'll find out about

2       that.

14:46:44  3              **MS. ANSARI:**  Okay.

14:46:45  4              **THE COURT:**  If so, I might reconsider it.

14:46:46  5              **MS. ANSARI:**  Thank you.

14:46:47  6              **THE COURT:**  But -- all right.  Now let's hear from the

7       defense right on that one point.  Why don't you start right in

8       on it, if you would, please.

14:46:56  9              **MR. PATRICK:**  Your Honor, may Mr. Hall make these

10      arguments, or do you want to hear from me?

14:47:01 11              **THE COURT:**  No, I want the lead counsel on this.

14:47:03 12              **MR. PATRICK:**  Yes, sir.

14:47:04 13              **THE COURT:**  That's why I specifically asked for lead

14      counsel to be here.  Yes, sir?

14:47:06 15              **MR. PATRICK:**  Yes, sir.  On the issue of "use," the

16      main concern that the defense has here is by putting this

17      language in the indictment, this is not surplusage, this is them

18      trying to change or create a statute and create meanings that

19      simply do not exist.  And by them -- either them abandoning it

20      or you striking it and allowing this indictment to go forward,

21      as of right now, our client is on no notice on exactly what he

22      has potentially violated because at the heart of our argument is

23      they're not even alleging a crime.

14:47:40 24              Now, we can get into more detail as we go through the

25      rest of our arguments where we get in the privacy rule, but --

1    but ultimately, working with "use" -- if "use" is not in

2    there --

14:47:49   3         **THE COURT:**  Yes.  All right.

14:47:50   4         **MR. PATRICK:**  -- it creates -- yes, sir.

14:47:52   5         **THE COURT:**  First of all, let me ask you:  Do you feel

6    a court has the authority to strike wording out of an

7    indictment?

14:47:59   8         **MR. PATRICK:**  I believe the Court -- the Court has

9    authority to strike true surplusage, such as a manner and means

10   in an assault case.  It's someone's hands, a rock, and an

11   unknown object, and you could strike one of those three because,

12   at the heart of it, there is still an assault.

14:48:15  13         **THE COURT:**  Oh, okay.  And their position is that if

14   we strike that -- that -- take "use" out, on all of the other

15   allegations, it spells out all of the elements of the alleged

16   offense.

14:48:27  17         **MR. PATRICK:**  Because "use" -- and -- the way we frame

18   it in our -- in our motion, Your Honor --

14:48:34  19         **THE COURT:**  Yeah.

14:48:34  20         **MR. PATRICK:**  -- boiling it down is, without "use," it

21   then is a cascading effect because by them citing a -- the

22   statute, the XL/XI, whatever they mean to -- by them even

23   agreeing to strike that -- actually, we can get into that one.

24   If -- we made a constitutional charge to that, and they did not

25   address it.

14:48:52  1          However, all of the manners and means, so to speak;

2  all of the ways someone can violate HIPPA; all of the details on

3  what HIPPA really means is in what is called the privacy rule.

4  The "use" is connected to that because what are you doing with

5  the information?  So if "use" is not in there, the rest of HIPPA

6  really doesn't matter legally for what they're arguing.  And

7  then "without authorization," which is why this is key,

8  Your Honor -- "without authorization" is doing all of the heavy

9  lifting.

14:49:24 10          The entire case really is about what does without

11  authorization mean.  If they are willing to and you are going to

12  allow them to strike the privacy rule and use, then this whole

13  trial, in our -- in our view, is about what does without

14  authorization mean, and our position is the Supreme Court, just

15  recently in *Van Buren,* made that incredibly clear by a

16  concession on what "without authorization" means by the SG in

17  front of the Supreme Court.

14:49:55 18          So our position here is --

14:49:56 19          THE COURT:  "SG" is what, solicitor --

14:49:57 20          MR. PATRICK:  The Solicitor General.

14:49:59 21          So here we are on the cusp of trial.  We don't exactly

22  know, by reading the superseding indictment, what we're

23  defending, and if this dramatically --

14:50:08 24          THE COURT:  Well, I think you may.  You can get an

25  inclination.

14:50:11  1          **MR. PATRICK:**  Well, we may get an inclination, yes,

2  sir, but what exactly is going to go to the jury?  We have no

3  idea how the jury could be charged right now.

14:50:18  4          **THE COURT:**  Well, is there a jury charge filed?

14:50:20  5          **MR. PATRICK:**  No, sir, not yet.

14:50:21  6          **THE COURT:**  Okay.  When's that coming in?

14:50:22  7          **MR. PATRICK:**  Those are --

14:50:23  8      *(Sotto voce discussion between Mr. Patrick and Mr. Hall.)*

14:50:23  9          **MR. PATRICK:**  Monday.  They're due Monday, which is

10  why today is so important.

14:50:27 11          **THE COURT:**  Okay.

14:50:28 12          **MR. PATRICK:**  When you get to the "without

13  authorization," one -- the -- a deeper concern, sort of a policy

14  concern is, as we sit here, what are we defending?  Which is, in

15  the reply, the government -- the Southern District of Texas is

16  taking a position contrary on a definition that the -- this

17  administration solicitor general conceded to and agreed to in

18  published case law with the Supreme Court in the last few years.

14:50:54 19          In addition, when we get to the privacy rule -- our

20  constitutional issue with the privacy rule, generally a rule and

21  regulation can't create a felony, let alone a crime --

14:51:03 22          **THE COURT:**  Slow down a little bit.

14:51:04 23          **MR. PATRICK:**  Yes, sir.

14:51:04 24          **THE COURT:**  We've got plenty of time.

14:51:06 25          **MR. PATRICK:**  Yes, sir.

14:51:06  1          But on our constitutional claim that a -- that a rule

2    and regulation and/or, going to the next step, a hospital policy

3    could create a felony, our constitutional claim to that they

4    don't even address, which means they've conceded it, and there's

5    a federal law that requires the office to notify Congress when

6    they abandon a challenge based on constitutional claims.

14:51:31  7          So we sit here in a position of we believe we've made

8    fair legal attacks to the superseding indictment, and what puts

9    us in a bind on how to defend Dr. Haim legally on what is

10   actually going to be put in front of the jury is -- they're now

11   taking positions contrary to their own Department of Justice --

14:51:52 12          **THE COURT:**  How so?

14:51:53 13          **MR. PATRICK:**  The definition of "with authorization"

14   for one.

14:51:54 15          **THE COURT:**  Yeah.

14:51:55 16          **MR. PATRICK:**  And they have decided, in their brief,

17   by not addressing our constitutional concerns on the privacy

18   rule -- one, they've misquoted the privacy rule in whatever this

19   typo is.  So there, on its face, there is no crime.  But if

20   they're willing to strike that, and you allow them to strike

21   that, we have challenged the privacy rule on constitutional

22   grounds, that it is not a crime, and we go into much more detail

23   in our brief on Congress has gone back to HIPPA many times --

14:52:26 24          **THE COURT:**  Is that the 25-pager?

14:52:28 25          **MR. PATRICK:**  Yes, sir.

14:52:28 1          **THE COURT:**  Okay.  I read it.  Go on.

14:52:30 2          **MR. PATRICK:**  Sorry about that.

14:52:31 3          However, what they're also effectively saying in the

4    reply brief is, Oh, we have a constitutional claim to the

5    privacy rule, that there is no felony in HIPPA.  And they

6    abandoned that.  They don't even address our argument.  They're

7    now telling another cabinet agency, HHS, what -- we don't even

8    know if they've consulted them; if HHS even thinks that -- if

9    they even know that this is being litigated in your courtroom

10   that potentially, on appeal, this could blow up HIPPA for the

11   whole country.

14:53:01 12         **THE COURT:**  It was a Ninth Circuit case, but this

13   thing is a different one, I believe.

14:53:04 14         **MR. PATRICK:**  The fact pattern is very different.

14:53:06 15         **THE COURT:**  Very different case.

14:53:08 16         **MR. PATRICK:**  There was also a HIPPA case out of the

17   Eastern District of Virginia in July.  The privacy rule was in

18   the indictment; the correct subchapter was in the indictment;

19   but that was also -- the facts are different there, and that was

20   paired with a -- basically, a computer breach charge.  Those

21   were outsiders getting in and, basically, stealing patient

22   information.  Very different fact patterns.

14:53:28 23         **THE COURT:**  Okay.  You're talking down here and, what

24   is it, the -- I should determine "without authorization."  What

25   is it that -- you want the -- a legal interpretation by the

1    Court at this time.

14:53:40  2         **MR. PATRICK:**  Yes, sir.

14:53:42  3         **THE COURT:**  What does the interpretation you'd be

4    looking at or that I should look at -- now, I -- I'm zeroing in

5    on that because you want me to, in effect, state what the

6    legal -- what the legal definition is at this time.

14:53:56  7         **MR. PATRICK:**  Yes, sir.  We do not -- our position is

8    this is not a fact question at this stage for what we're asking

9    you to do for the jury.

14:54:04  10        **THE COURT:**  Why?  Now, he did access the records,

11   right?

14:54:09  12        **MR. PATRICK:**  Yes.

14:54:09  13        **THE COURT:**  Okay.

14:54:10  14        **MR. PATRICK:**  So with -- the term "without

15   authorization" does not have a definition in HIPPA.

14:54:16  16        **THE COURT:**  In where?

14:54:17  17        **MR. PATRICK:**  In the HIPPA statute.

14:54:19  18        **THE COURT:**  Okay.

14:54:19  19        **MR. PATRICK:**  Okay.  In the Social Security code,

20   which is where all this is, that is not defined.  In the

21   criminal code, in the Computer Fraud and Abuse Act, there is a

22   term "without authorization," and there is exceeding -- what's

23   the term, Jeff?

14:54:31  24        **MR. HALL:**  Exceeding authorized access.

14:54:31  25        **MR. PATRICK:**  Exceeding authorized access, okay?  If

1  you give me a little leeway here, Your Honor.

14:54:37  2          **THE COURT:**  Go on.

14:54:38  3          **MR. PATRICK:**  In the *Van Buren* case, that was a

4  situation where a police officer was basically getting license

5  plate information from cases he wasn't investigating, okay?  The

6  argument and the theory under which he was charged was, well,

7  yes, he's allowed access into the system, but he ventured

8  outside of his permitted boundaries because he was permitted in

9  the system.

14:55:01  10          Their argument was beyond his --

14:55:04  11          **THE COURT:**  By the way, let me ask the government

12  attorney -- you can confer with each other.  I think you ought

13  to listen to what he's having to say so when I get back to you,

14  you can rebut it.  I know the two lawyers -- I'm just looking

15  over there.  You need to listen to this because I want you to

16  do -- respond to the points that -- that the -- what is it, the

17  defense counsel is raising.

14:55:26  18          Go on.

14:55:28  19          **MR. PATRICK:**  So the theory of that case was he

20  exceeded -- the officer exceeded his authorized access.  That

21  term auth- -- "exceeding authorized access" is not in HIPPA.

22  The fact pattern to this case and everything we've been

23  presented in discovery, in informal and formal conversations

24  with the government is that's really the type of case here,

25  exceeding his authorized access; going beyond where he should

1  be.

14:55:54  2            **THE COURT:**  What is your suggested --

14:55:56  3            **MR. PATRICK:**  So our suggestion is this --

14:55:58  4            **THE COURT:**  And I'll ask the government the same

5  question.  So be sure to address it.

14:56:01  6        Go on.

14:56:02  7         **MR. PATRICK:**  In *Van Buren*, the Court categorically

8  says the exceeding authorized access is just not -- that's not a

9  thing, okay?

14:56:10 10         **THE COURT:**  It's what?

14:56:10 11         **MR. PATRICK:**  It's not a thing.  They dismiss it.

12  They dismiss that as a concept.

14:56:14 13       And no one ever disputed, in *Van Buren,* that the

14  officer had authorized proper access into the system to start

15  with, okay?  He's a police officer.  He was allowed to access

16  this database.

14:56:28 17       What he did once he got in there is what they charged

18  him with.  The with- -- since "without authorization" is not

19  defined in HIPPA, we have fresh case law on what that means in a

20  computer fraud case on a fact pattern very similar to what

21  they're alleging Dr. Haim did.  What we're asking the Court to

22  do is make a legal determination that "without authorization" is

23  what the Supreme Court said it was and what the solicitor

24  general agreed, that it is a gates-up-or-gates-down

25  determination, which is:  Is he a doctor who has been given

1    proper credentialed access into the system, or is he some

2    outside interloper?  Is he the janitor?  Is he someone who

3    walked by a terminal that was left unlocked, and he's a random

4    person off the street?

14:57:19  5          No.  He has accessed authorize.  Their own discovery,

6    witnesses they have told us they're going to call under oath

7    would say, "Yes, he's a doctor.  He was in good standing.  We

8    gave him authorized access."  There is not a single witness that

9    the government can call that will ever say he did not have

10   authorized access.

14:57:35 11          In addition -- and I'm almost done.  We discussed this

12   in the last hearing.  When TCH responds to the Health and Human

13   Service Office of Civil Rights investigation into this case in

14   the civil side, they tell HH- -- the lawyers for Texas

15   Children's tell HHS that Dr. Haim had authorized access, and

16   when -- the context of their response, it is clear that they are

17   following the definition from *Van Buren*.

14:58:06 18          So we are in a position here now, with proposed jury

19   charges due Monday:  What is that -- what is the jury going to

20   have to decide?  Is it -- because if it comes down -- we cannot

21   even fathom a fact pattern of what is left in the case if this

22   is a gates-up-or-gates-down.  The government cannot stand up and

23   say he did not have authorized access.

14:58:29 24          If their argument is beyond that, that, oh, he

25   exceeded his access, then we're going to go down the rabbit hole

1  of, well, they've abandoned the privacy rule.  That's where all

2  the rules and regulations on what that exceeding could mean

3  and/or the hospital policies and training manuals that's in

4  their discovery don't always jive with what the HHS rules are.

14:58:52  5      So how does Dr. Haim know what he's defending against

6  when you have pages of internal regulations, pages of hospital

7  regulations that do not always 100 percent match, and, at the

8  end of the day, we could be standing in front of a jury saying

9  he exceeded a hospital policy that was found on a slide in some

10  training; therefore, he's a felon, and they're saying this is

11  strict liability.

14:59:18  12      **THE COURT:**  Okay.

14:59:18  13      **MR. PATRICK:**  And I'll stop talking.

14:59:19  14      **THE COURT:**  Okay.  Your response, please, right to

15  that point.

14:59:22  16      **MS. ANSARI:**  Yes, Your Honor.  First of all, the

17  government will bring doctor after doctor after doctor from TCH

18  that will tell you -- the evidence will show that it is very

19  obvious that the defendant did not have authorized access based

20  on the facts of this case; based on their education; based on

21  their training; based on not -- policies at TCH and Baylor that

22  are all very consistent --

14:59:42  23      **THE COURT:**  So what do you say, that that's a jury

24  question?

14:59:45  25      **MS. ANSARI:**  Absolutely, Your Honor.  It would be very

1    clear --

14:59:47  2            THE COURT:  Without authorization?

14:59:49  3            MS. ANSARI:  Correct.  And it will be very clear.

14:59:50  4            THE COURT:  All right.  What about all the arguments

5    raised by your opposing counsel?

14:59:55  6            MS. ANSARI:  Well, in regards to -- can you please

7    direct me to specific topics, Your Honor?

14:59:59  8            THE COURT:  No, you tell me.  He was talking and

9    talking --

15:00:02 10            MS. ANSARI:  Okay.

15:00:02 11            THE COURT:  -- and he raised a lot of number of things

12    that the government needs to address.

15:00:09 13            MS. ANSARI:  Okay.  Let's start with the citation

14    error about the XL, where it should be XI --

15:00:15 15            THE COURT:  Oh, no, we've already done that.

15:00:16 16            MS. ANSARI:  Oh, we have?

15:00:18 17            THE COURT:  You did correct that.

15:00:19 18            MS. ANSARI:  Okay.  Very good.

15:00:20 19            THE COURT:  Right?  You did correct it?

15:00:22 20            MS. ANSARI:  I was -- but if I did, I'll go with you

21    on that, Your Honor.

15:00:25 22            THE COURT:  Well, hold it a second.

15:00:26 23            MS. ANSARI:  I'm not sure I did.

15:00:27 24            MR. PATRICK:  The typo -- Your Honor, the typo was in

25    both the original and the superseding indictment.

15:00:30 1          **THE COURT:**  Oh, it's in the superseding also?

15:00:31 2          **MR. PATRICK:**  It's in both, yes, sir.

15:00:33 3          **THE COURT:**  Well -- well, you had -- you would -- were

4     you -- addressed this in on open court last time, didn't we?

15:00:41 5          **MR. PATRICK:**  We did not have the superseding yet.

15:00:43 6          **THE COURT:**  Oh.

15:00:43 7          **MR. PATRICK:**  And we --

15:00:44 8          **THE COURT:**  Yeah, I got it.

15:00:45 9          **MR. PATRICK:**  Judge, we were laying behind this one.

15:00:49 10         **MS. ANSARI:**  It changed, Your Honor, eventually -- and

11    it changed.  It's a typo, Your Honor, citation error.  Unless it

12    misleads the defendant --

15:00:55 13         **THE COURT:**  Well, who's proofreading?  All of you?

14    All three folks?

15:01:01 15         **MS. ANSARI:**  We apologize, Your Honor.

15:01:02 16         **THE COURT:**  Well --

15:01:03 17         **MS. ANSARI:**  You can blame it on me, Your Honor.

15:01:04 18         **THE COURT:**  I'm not --

15:01:05 19         **MS. ANSARI:**  I will take the blame.

15:01:05 20         **THE COURT:**  -- blaming.  It's in a major case ready to

21    go to trial, and it's still incorrect.

15:01:11 22         **MS. ANSARI:**  Your Honor, I will take the blame on

23    that.  They are excellent --

15:01:16 24         **THE COURT:**  So how do you handle that?  Is it up to

25    the judge, also, to make that change?

15:01:20  1          **MS. ANSARI:**  Well, the citation -- unless they don't

2   have notice, and it's highly prejudicial, which they do have

3   notice, clearly, citation errors are not grounds to dismiss an

4   indictment.

15:01:32  5          **THE COURT:**  Well --

15:01:32  6          **MS. ANSARI:**  That's according to the Federal Rules Of

7   Criminal Procedure -- Rule 7, Your Honor.

15:01:38  8          **THE COURT:**  Of appellate procedure?

15:01:42  9          *(Sotto voce discussion between Mr. Ansari and Mr. White.)*

15:01:47 10          **MS. ANSARI:**  Yeah.  Criminal Rules of Procedure, 7,

11  Your Honor.

15:01:49 12          **THE COURT:**  Well, let me pull it out.

15:01:51 13          **MS. ANSARI:**  Subsection C2, Your Honor.

15:01:53 14          **THE COURT:**  Hold it.  Rule -- Rule 7, here it is.  The

15  indictment and the information.

15:02:02 16          What section am I looking for?

15:02:06 17          **MS. ANSARI:**  C2, Your Honor.  Federal Rule of Criminal

18  Procedure 7(c)(2).

15:02:11 19          **THE COURT:**  (Reading) Unless the defendant was misled

20  and thereby prejudiced, neither an error in a citation nor a

21  citation's omission is grounds to dismiss the indictment or

22  information or to reverse conviction.

15:02:24 23          I'll get to the defense position in a second, but you

24  can anticipate -- you can anticipate what's coming.  So

25  anticipate, what is it, the argument that you're going to get --

1    or the response you're going to get from Mr. Patrick.

15:02:41  2          MS. ANSARI:  Okay.  Yes, Your Honor.

15:02:42  3          And -- okay.  In regards to defining "without

4    authorization," as we've stated in our motion, Your Honor, the

5    computer hacking case of *Van Buren* is not relevant to this case.

6    It's a completely different fact scenario and fact pattern.  It

7    does not apply to a doctor in a hospital.

15:03:00  8          THE COURT:  Now, where does "without authorization"

9    come from?

15:03:04 10          MS. ANSARI:  It comes from the language in -- of

11   HIPPA, and it's in our statute -- it's our elements in our

12   statute.

15:03:11 13          THE COURT:  It's in the statute?

15:03:12 14          MS. ANSARI:  It's in the statute, Your Honor.

15:03:14 15          THE COURT:  Go on.

15:03:15 16          MS. ANSARI:  And so in this case, our -- our -- sorry.

17   Our suggestion is that "without authorization" is without the

18   authority of the governing entity.  In this case, it would be

19   Texas Children's Hospital.

15:03:30 20          And if you believe what the defense said --

15:03:32 21          THE COURT:  So that's a fact -- that's a fact you're

22   going to have to prove?

15:03:35 23          MS. ANSARI:  Absolutely.  The jury can decide.  And

24   they can argue whatever they want, but the jury will decide,

25   based on what the witnesses said, if the defendant was acting

1    without authorization.

15:03:44  2          And, Your Honor, if you believe -- or if anyone

3    believes anything -- what the defense proposes, that means any

4    person working in a hospital can go look up anybody's medical

5    file under any circumstance they want, for whatever reason they

6    want, and it's okay.  That is what they want people to think or

7    what the HIPPA statute should be, and that is absolutely not.

15:04:06  8          There are cases after cases that have gone -- have

9    pled -- we just had, actually, somebody that was found guilty by

10   a jury for a HIPPA statute violation, and all of these cases

11   have gone to the jury or -- if they've gone, it's with the

12   language that we are using -- that we are suggesting or using in

13   the statute.  This is a criminal case, and it's a factual

14   situation for the jury to decide, Your Honor.

15:04:28 15          **THE COURT:**  Okay.  Response, please?

15:04:31 16          **MR. PATRICK:**  So on the issue -- let me first address

17   the issue regarding whether it's a typo or not and it's

18   something that can be changed.  This is not a typographical

19   misspelling.  This is citing to a statute that should be legally

20   binding, putting the defense on notice of what he has to defend

21   himself on.  We could have been quite snarky in our response and

22   said, "There is no XL.  We don't know what you're talking

23   about."

15:04:55 24          But for the sake of efficiency, we went and assumed

25   they're talking about XI and --

15:05:01  1            **THE COURT:**  I remember talking about it at the last

2      status conference, too?

15:05:04  3            **MR. PATRICK:**  Correct.

15:05:06  4            **THE COURT:**  Go on.

15:05:09  5            **MR. PATRICK:**  So this is -- this is the charging

6      document.  It a -- if there was a statute that was mislabeled on

7      a gun case, on a Hobbs case, on a fraud case -- I mean, how --

8      how are you supposed to charge the jury when you have an

9      exemplar of an indictment that is simply wrong from what you

10     should be putting in front of the jury, which is what should be

11     right, and we think that is fatal and reversible.

15:05:30 12            This is not -- this is not fixing a misspelling.  This

13     is not fixing a comma or a period.  This is citing what they're

14     alleging -- on how he committed a felony; however, respectfully,

15     none of this matters because they've abandoned it.

15:05:44 16            We made a constitutional challenge to the privacy

17     rule.  This long citation to XL is what is colloquial --

18     colloquially termed the privacy rule, and we have raised a

19     constitutional challenge to it --

15:05:56 20            **THE COURT:**  Okay.  What has been abandoned in your --

21     in your position?

15:06:00 22            **MR. PATRICK:**  All this language on -- sorry.  We

23     flipped pages.

15:06:20 24            It's the language -- I believe it's at the bottom of

25     page 4 of the indictment.  Here it is.  Counts 2 through 4, the

1  bottom paragraph on page --

15:06:28 2         **THE COURT:**  Slow down, please.

15:06:29 3         **MR. PATRICK:**  Yes, sir.

15:06:30 4         **THE COURT:**  I'm listening intently here.

15:06:32 5         **MR. PATRICK:**  Yes, sir.

15:06:32 6         On the bottom of page 4, the last paragraph below

7  Counts 2 through 4, by their briefing, it appears they have

8  abandoned the language: (Reading) And for a reason other than

9  those permitted by Title 42, United States Code, Chapter 7,

10 Subchapter XL, part C, parenthetical provisions of HIPPA.

15:06:58 11        That's the privacy rule.  The privacy rule is --

12 that's the engine that drives the car.

15:07:06 13        All of the rules and regulations, all the manners and

14 means, all of the exceptions, all of the defenses, everything is

15 in there, and so twofold.  One, this is beyond a typo.  This is

16 a fatal error to the indictment, and we would also take the

17 position that at this stage, if the Court were to change it, we

18 would respectfully request our 30 days, that this is a material

19 change to the indictment.  This is actually citing a provision

20 that we are now put on notice of what we're defending ourselves

21 to.

15:07:34 22        **THE COURT:**  Well, you got that in open court.  It was

23 informal, but didn't you get it in open court that that was an

24 error?

15:07:41 25        **MR. PATRICK:**  No, sir.  We actually caught this error

1   months ago and have been hiding behind it.  We've been laying

2   behind this.

15:07:47  3          THE COURT:  Well, what was -- wasn't that mentioned?

15:07:48  4          MR. PATRICK:  I don't believe --

15:07:48  5          THE COURT:  Wasn't that mentioned the last hearing we

6   had?

15:07:50  7          MR. PATRICK:  No, sir.  This did not come up in the

8   September hearing, no, sir.

15:07:53  9          THE COURT:  Okay.

15:07:55 10          MR. PATRICK:  So we've been laying behind this one.

11  So that's the status that we're taking on this right now.

15:08:01 12          On the -- so -- but they've abandoned it, again, on

13  constitutional grounds.

15:08:05 14          THE COURT:  How?  Where?

15:08:07 15          MR. PATRICK:  So as you read through their reply, they

16  get through our first few points, and then it sounds more like

17  an appellate opinion where they say, And the Court does not need

18  to consider the rest of the --

15:08:15 19          THE COURT:  Slow down, please.

15:08:16 20          MR. PATRICK:  Sorry.  Sorry.

15:08:18 21          THE COURT:  Go on.

15:08:19 22          MR. PATRICK:  They get to a point in their reply

23  where -- I'm paraphrasing -- And we have addressed their initial

24  points, and the Court does not need to go any further in

25  examining the rest of their arguments because our first ones --

1  it reads more like an appellate argument than it does a reply to

2  a motion to dismiss.

15:08:35  3          They -- they don't address our constitutional claim on

4  "without" -- on the privacy rule.  And so that is on their

5  Section 2, Paragraph D, which is on the last page, page 12, of

6  their response, where it says:  (Reading) The Court need not

7  reach the rest of the defendant's arguments.  The remainder of

8  the defendant's arguments focus on HIPPA's privacy rule as

9  applied to its criminal statutory provision, defendant's motion

10 at 18 through 25.  And while the government does not concede any

11 of the arguments that the defendant makes therein, the Court

12 does not reach these issues because, as discussed above, there

13 is no need to import to the privacy rule to understand the

14 meaning of "without authorization."

15:09:16 15         They don't address it, and they have to, or they've

16 abandoned it.  So the Southern District of Texas, which is, in

17 our view, in violation of Department of Justice policy and

18 in -- well, at least in violation of the part of federal law

19 which requires them to give notice to Congress, if Congress

20 wants to intervene -- it's in the statute -- that they've

21 abandoned on a constitutional claim.

15:09:40 22         So, again, all this ties together, and I wish this

23 were more of a, This piece we could argue, this piece we could

24 argue, this piece we could argue, but they're all intertwined.

25 And that's why, ultimately, we believe and are asking the Court

1    to define "without authorization" today because, otherwise, this

2    is going to be -- without a privacy rule, we're going to put on

3    evidence, and the government's going to stand up and say,

4    Without authorization means he can't look at anything he's not

5    supposed to.

15:10:09  6        And the Court makes that pretty clear and says -- the

7    Supreme Court said exceeds authorized access, which is what

8    they're arguing, means -- that must breech into an area never

9    permitted as an inside hacker.  They -- they -- the Supreme

10   Court said this concept of an inside hacker is not operable with

11   this type of fact pattern, and we think these cases are far more

12   analogous than the government wants to lead on to.

15:10:35 13        So if all we are boiled down to, without the privacy

14   rule -- because without the privacy rule, if they abandon that

15   language, there's nothing about what HIPPA means; there's

16   nothing about what HIPPA does; there's nothing about defenses,

17   exceptions -- none of that is in the indictment.

15:10:53 18        So it's them standing up saying, Without authorization

19   means he can't go anywhere; the hospital tells him where he

20   can't go.  Well, where does the hospital get that authority?

21   From the privacy rule, which they've abandoned --

15:11:05 22        **THE COURT:**  Slow down, please.

15:11:05 23        **MR. PATRICK:**  Yes, sir.  That authority --

15:11:05 24        **THE COURT:**  It's not only for me.  It's for the court

25   reporter.

15:11:07 1          **MR. PATRICK:**  I know, I'm sorry.  Bad habit.

15:11:09 2          **THE COURT:**  Well, people tend to speed up when they

3      read, but you speed up all the time.  Go on.

15:11:16 4          **MR. PATRICK:**  By abandoning the privacy rule, you can

5      stretch it to its conclusion that by saying, Oh, the hospital

6      says you can't -- per this training slide, you can't look at X,

7      Y, and Z.  The hospital gets that apparent authority from the

8      privacy rule.  It all falls on this issue of if you believe the

9      privacy rule was not abandoned in their argument, which we tend

10     [sic] that it does, it's a typo, and it has to be right before

11     it goes to a jury.

15:11:44 12         But, further, if this case does boil down to and you

13     allow them to abandon that language, then all we're left with is

14     what does without authorization mean, and, again, we're going to

15     be standing in front of a jury, and we're going to say -- we're

16     going to make arguments about this is a gates-up-or-gates-down.

17     The hospital themselves -- which here's an interesting point,

18     too, Your Honor --

15:12:04 19         **THE COURT:**  You're going to leave it to them to

20     interpret it?

15:12:07 21         **MR. PATRICK:**  Well, we're going to do everything we

22     can to try to define it within the rules and what you allow and

23     witnesses and -- if we do that on cross or if we decide to put

24     on a case.  We're, obviously, not going to show that hand here.

15:12:16 25         But here's what's interesting:  If we are left with

1   the definition of what does "without authorization" mean, the

2   government has said that Texas Children's and its employees are

3   victims in this case.  But in their own discovery, Texas

4   Children's tells HHS that he had authorized access; he had

5   authorization.

15:12:41   6        So they're also speaking out of both sides of their

7   mouth by saying, We want you to believe TCH is a victim in this

8   case and believe everything they say, except in these sworn

9   documents in response to an HHS investigation.

15:12:52   10       THE COURT:  All right.  Will that be part of your

11   cross-examination?

15:12:54   12       MR. PATRICK:  Of course.  Of course.  But that's why

13   --

15:12:56   14       THE COURT:  You know, if there's no definition

15   provided by the Court.

15:12:59   16       MR. PATRICK:  Yes, sir.  And they just want a

17   dictionary definition, and we think -- and our position is that

18   is folly and likely reversible error when there is a fresh

19   definition of this fact pattern -- very similar fact pattern in

20   front of the Supreme Court.

15:13:15   21       THE COURT:  Give me that -- already been up there?

15:13:17   22       MR. PATRICK:  Yes, sir.  On the *Van Buren* case, yes,

23   sir.

15:13:19   24       THE COURT:  All right.  You want to respond, please?

15:13:22   25       MS. FEINSTEIN:  Your Honor, will you let me respond

1  momentarily?  I understand Ms. Ansari's the lead AUSA.

15:13:27  2           **THE COURT:**  All right.  Go on.

15:13:28  3           **MS. FEINSTEIN:**  I really appreciate it.  I did a lot

4  of work on the briefing.

15:13:31  5           **THE COURT:**  I understand that.  I wanted the lead

6  attorney speaking.  If you want to just briefly address that

7  point, I'll allow it.

15:13:37  8           **MS. FEINSTEIN:**  Yes.  I'd like to do that, Your Honor.

15:13:39  9           This is an issue of statutory interpretation, right,

10  and with statutory interpretation you look, first, to what are

11  the words in the statute.  So we look at the HIPPA criminal

12  provision, 1320 D-6.  The defense has said in their motion that

13  they believe the meaning of "without authorization" is without

14  authorization of the covered entity, and we agree.

15:14:04  15          We are not abandoning the privacy rule.  Nowhere have

16  we abandoned the privacy rule.

15:14:09  17          **THE COURT:**  Privacy rule, define it.

15:14:11  18          **MS. FEINSTEIN:**  The privacy rule are the regulations

19  that the Health and Human Services puts forward pursuant to

20  their authority under HIPPA.

15:14:19  21          **THE COURT:**  Go on.

15:14:19  22          **MS. FEINSTEIN:**  And so of course hospitals are bound

23  by the privacy rule.  They're bound by the regulations.  If

24  hospitals don't follow the regulations, they are then subject to

25  civil liability under the regulations.

15:14:34  1          What we are saying, simply, is that the Court need not

2   look to the privacy rule for the meaning of "without

3   authorization."  All the Court needs to do is tell the jury it's

4   without authorization of the covered entity, which in this case

5   is Texas Children's Hospital, and then it's going to be a fact

6   question for the jury about whether the defendant was authorized

7   to access and obtain these medical records.

15:15:00  8          They have one theory.  What they want the Court to do

9   right now is adopt their version of the facts, but that's not

10  what the Court is supposed to do in a motion to dismiss.  On a

11  motion to dismiss, the Court has to adopt the allegations in the

12  indictment as true and then make the ruling.  That's what *Kay*

13  says.  That's black-letter law.

15:15:20  14         And as for all of this stuff about typos, we

15  apologize, Your Honor.  XL, XI are very similar.  We should have

16  paid more attention, absolutely, but the defendant has notice,

17  and that is the question --

15:15:31  18         THE COURT:  All right.  On the notice issue --

15:15:33  19         MS. FEINSTEIN:  Yes.

15:15:33  20         THE COURT:  -- how much notice -- you say that this is

21  brand new legally.  This is their first legal notice today.

15:15:40  22         MS. FEINSTEIN:  No.  No, Your Honor.  They've had

23  notice all along.

15:15:42  24         THE COURT:  How?

15:15:43  25         MS. FEINSTEIN:  It says in the indictment "HIPPA."  It

1   says the criminal provision --

15:15:47  2        **THE COURT:**  We're talking -- how many times is the --

3   that XI and XL different?

15:15:53  4        **MS. FEINSTEIN:**  So XL -- let me just pull up the --

15:15:56  5        **THE COURT:**  You know, what -- what we're trying to

6   do -- we're all trying to do, and neither one of us -- well, I

7   don't know -- I'm not talking about the parties.  We don't try

8   the case for the appeals court.  We're trying it for here, but

9   we want to keep it clean.

15:16:09  10        **MS. FEINSTEIN:**  Absolutely.

15:16:09  11        **THE COURT:**  All right.  And I understand what

12   Mr. Patrick said.  Legally, this is the first time they have

13   been noticed that this was a -- a problem, and you're saying,

14   no.

15:16:20  15        **MS. FEINSTEIN:**  I don't understand --

15:16:21  16        **THE COURT:**  Now, you want to take that on appeal, if

17   that's the only thing they end up being able to drive a truck

18   through?

15:16:28  19        **MS. FEINSTEIN:**  Your Honor, they -- the question is

20   whether he has notice of what the charges were against him.

21   He's had, now, the original indictment; now the superseding

22   indictment, right?  And the reference to XL, okay, is just a

23   reference to which part of the -- the statute, right?  It's --

24   I'm looking for it right here.

15:16:48  25        Okay.  It's the subchapter.  It's a reference to the

1   subchapter in the statute.  So Title 42, United States Code --

15:16:54   2          **THE COURT:**  And we all -- we all understand that.  You

3   don't have to go back over it.

15:16:57   4          **MS. FEINSTEIN:**  Right.

15:16:58   5          **THE COURT:**  But what I heard -- now I'm just trying to

6   narrow it down.  I may take a short break and come back and give

7   you some of the rulings that's necessary because we're on a fast

8   track, and this is -- that would be -- we -- we had to spell it

9   out the first time to get to the -- to that -- this date, and --

10   but Mr. -- what is it -- Mr. Patrick raised that point, that he

11   said legally this is the first date they've had official notice,

12   and if they want to exercise their right, if it's so, they need

13   at least 30 days' notice.

15:17:34   14         **MS. FEINSTEIN:**  Your Honor, respectfully, that is just

15   not the case.  We believe -- what does notice mean?  Notice --

15:17:39   16         **THE COURT:**  You tell me.

15:17:39   17         **MS. FEINSTEIN:**  -- means --

15:17:39   18         **THE COURT:**  You tell me.

15:17:40   19         **MS. FEINSTEIN:**  Notice means --

15:17:41   20         **THE COURT:**  Because -- hold it.

15:17:42   21         **MS. FEINSTEIN:**  Yeah.

15:17:42   22         **THE COURT:**  Eventually, the appellate court, if that

23   goes up on a point of error, is going to have to tell us.  And I

24   don't try it for the appeals court, but I'm not building in

25   anything that -- on either side, because I'm going to get to

1    some other matters in a moment after we're through arguing this.

15:17:58 2         So you tell me what's the safest thing at this point.

15:18:02 3         **MS. FEINSTEIN:**  Sure.  Notice is whether the defendant

4    understands and is able to defend against, including for double

5    jeopardy purposes, the charges against him.  There is no

6    question that long before today the defendant understood the

7    exact criminal provision the government was intending to charge

8    him with and had charged him with.

15:18:22 9         We say HIPPA.  We refer to the statutory language of

10   HIPPA.  Everything in our citation is right except for the XL.

11   It is disingenuous of them, Your Honor, to claim that they did

12   not have notice before today.

15:18:35 13        **THE COURT:**  Well, I guess he said, in effect -- I'm

14   not putting words in the -- the defense mouth, but they do --

15   they were laying behind the log --

15:18:44 16        **MS. FEINSTEIN:**  Exactly.  They knew -- they were

17   saying they knew about this error.  They were holding it back

18   just to drop us -- on us last minute so that we'd have to

19   respond today.

15:18:53 20        **THE COURT:**  I don't mean anything negative because I

21   understand what --

15:18:55 22        **MS. FEINSTEIN:**  It's just strategy.

15:18:56 23        **THE COURT:**  -- the law is and whatever -- and,

24   eventually, I'm going to rule on it, and we'll move on, okay?

15:19:02 25        Counsel -- all right.  What is it -- and that's --

1   hang on.  Mr. Hall, since we allowed the second chair, if you

2   want --

15:19:12  3           **MR. PATRICK:**  He's been itching, yes, sir.

15:19:14  4           He's been itching, yes, sir.

15:19:14  5           **THE COURT:**  I bet you he has.  All right.  Go on.

15:19:19  6           **MR. HALL:**  No, I appreciate the opportunity,

7   Your Honor.

15:19:21  8           So there's two pieces:  The privacy rule and then the

9   "without authorization" piece.  So I did want to address both of

10  those because counsel addressed both of them just now.

15:19:30  11          So on the privacy rule, we made -- I mean, we still

12  don't really know what they're saying because they're saying, on

13  the one hand, they --

15:19:36  14          **THE COURT:**  Well, the bottom line -- everybody knows

15  what everybody else is saying, but we're talking as a matter of

16  law.  So go on.

15:19:42  17          **MR. HALL:**  Well, Your Honor, I honestly still don't

18  because they're saying, on the one hand, they are not defending

19  the privacy rule.  We made three separate arguments against the

20  privacy rule.  We said, one, it -- it does not actually cover

21  the conduct here, right?  So the regulation itself simply

22  doesn't cover the conduct because it never talks about obtaining

23  individually identifiable health information;

15:20:03  24          Two, Congress never incorporated it into the criminal

25  statute.  It's -- because it's not part of this part, which also

1    means that Congress didn't incorporate it into the civil

2    provision.  So when she -- when the government says that, well,

3    the hospitals are still sort of bound by this, we have made the

4    argument, No, they're not.  No one is, right?

5           Congress --

6           **THE COURT:**  Of course, there's no other case right on

7    point.

8           **MR. HALL:**  There is not, Your Honor, but the -- I will

9    say the statutory -- we make the argument it's -- it's -- there

10   is a fair amount of briefing on it --

11          **THE COURT:**  Yeah.

12          **MR. HALL:**  -- but it is very clear, and both

13   Congress -- so Congress itself, when it's referred to the

14   privacy rule, has noted that as a separate section than the

15   Social Security Act, and HHS also, when it has promulgated

16   regulations, has recognized that there's two strands of

17   authority; that on the one hand they have the actual HIPPA

18   statute that we think of as HIPPA that's been codified, and then

19   we have the separate provision that give them the authority to

20   promulgate regulations, but that was never incorporated into the

21   criminal or civil --

22          **THE COURT:**  All right.  Move on from privacy.  If you

23   want to wrap it up, fine.  I want to get back to the definition.

24          **MR. HALL:**  Yes, Your Honor.  So the reason I'm saying

25   that is just because when they say, Well, you know what we mean

1    by the subchapter XL provision, part C, I -- we still don't

2    because they keep saying, We're not -- we're not defending the

3    privacy rule, but we think everybody's still bound by it, and

4    we're not abandoning it.  So I don't know what to do with that.

15:21:31 5         On the --

15:21:32 6         **THE COURT:**  Well, you're going to have to decide one

7    way or the other.

15:21:36 8         **MR. HALL:**  Well, Your Honor, they have to decide.  The

9    problem is -- and here's where the problem comes in:  If the

10   privacy rule is in effect, then we get to rely on the defenses

11   in it.  On the other hand, they've basically abandoned it, and

12   they said the "without authorization" inquiry doesn't really

13   matter on -- does it matter what the privacy rule says or not?

14   Because either the hospital has to follow the privacy rule and

15   only the privacy rule, which, again, doesn't cover Dr. Haim's

16   conduct as alleged in the indictment, or the hospital gets to

17   set broader rules; it gets to set whatever rules it wants.  And

18   if it does that, it creates a lot of constitutional problems.

15:22:16 19        Now, they said that the text supports their

20   interpretation.  We put in an argument, on page 4 of our reply

21   brief, how the text is very similar to the text in the Computer

22   Fraud and Abuse Act; is a near-perfect parallel.

15:22:30 23        I'll say the one difference is between "obtain" and

24   "access," and the reason Congress used "obtain" is because most

25   of the files, when HIPPA was created, were paper files.  So they

1    said obtain the files rather than accessing a computer.

15:22:46 2         THE COURT:  All right.  Now move on to the other

3    point, please.

15:22:48 4         MR. HALL:  Yes, Your Honor.  Well, so I was just going

5    to go through -- we make arguments on the legislative history

6    and the constitutional canons, but the problem is, ultimately,

7    that we think they've completely abandoned the privacy rule.

8    That creates tremendous problems when you try to then say, well,

9    what does without authorization mean.  If it is --

15:23:04 10        THE COURT:  Let's get to "without authorization."

15:23:06 11        MR. HALL:  Yes, Your Honor.

15:23:06 12        So on the "without authorization," we think it's

13   perfectly clear in *Van Buren* that the solicitor general agreed

14   with the Supreme Court, and all the parties agreed that "without

15   authorization" is a gates-up-or-down inquiry based on the text

16   of the statute.  Nobody came up with the position that it's

17   whatever their law enforcement agency thought in their policies.

18   And so it's a -- again, a near perfect duplicate in HIPPA.  Same

19   subject verb agreement; same structure.  The real difference is,

20   again, just the verb "access" a computer versus "obtain" because

21   when HIPPA came out, most files were on paper.

15:23:45 22        So it's going to protect obtaining it rather than

23   accessing the computer to obtain, but near perfect match.  And

24   so the language is the same.

15:23:53 25        We go through how the legislative history shows that

1    the whole reason they adopted this was not to protect against

2    doctors misusing their access, right, it was to protect against

3    outsiders, employee -- people who are employees or not employees

4    who could get this information but wouldn't be covered by the

5    HIPPA privacy rule.

15:24:15  6        It was always to protect people who are ostensibly not

7    covered by the privacy rule, and they're saying that Dr. Haim is

8    ostensibly covered by the privacy rule, but they're not

9    defending it.

15:24:24 10        **THE COURT:**  All right.  Your position is you need a

11   definition, correct?

15:24:27 12        **MR. HALL:**  Ultimately, we need a definition --

15:24:28 13        **THE COURT:**  And what's the definition you purport?

15:24:30 14        **MR. HALL:**  The definition is that authorization means

15   any authorization to obtain individually identifiable health

16   information.  If he had authorization to obtain IIHI --

15:24:42 17        **THE COURT:**  Any?  Any?

15:24:43 18        **MR. HALL:**  Yes, Your Honor.  Yes.

15:24:44 19        **THE COURT:**  Okay.

15:24:45 20        **MR. HALL:**  An alternative would be if he had the -- if

21   he had the ability, right -- access -- to obtain the IIHI at

22   issue, right, under any circumstances, and that the -- the way

23   to think about this is that the privacy policy -- I'm sorry, the

24   privacy rule and the hospital policy doesn't categorically bar

25   him from accessing any patient information at all.

15:25:10 1          All it says is certain conditions have to attach to

2     that, right?  And the way that the Supreme Court interpreted

3     authorization -- again, gates-up-or-down inquiry -- those

4     conditions don't matter, right?  It may matter if the Congress

5     had used a different term, but when you're talking about the

6     gates-up-or-down inquiry, either you have authorization to

7     access it in some circumstances, and there's not going to be

8     this -- there's no "exceeds authorized access" in HIPPA.

15:25:38 9          So if you can access it ever -- and there's no dispute

10    that TCH gave Dr. Haim log-in credentials to their system --

11    their electronic medical records system, and that, therefore, he

12    had authorization to access any of these records.  The only

13    question is:  Well, did he access them for the right reasons --

14    and I do want to point out just that those reasons of

15    treatment -- that's what it would be in the privacy rule -- are

16    one of the reasons, but there are actually many reasons in the

17    privacy rule that doctors are allowed to access patient

18    information.

15:26:15 19         So when they say that's the only authorized use,

20    that's -- that's actually incorrect.

15:26:20 21             **THE COURT:**  Even if it wasn't for their patients?

15:26:21 22             **MR. HALL:**  I'm sorry?  Yes.  Yes, Your Honor.  He

23    doesn't have -- in the privacy rule, there's no concept of a

24    doctor having a patient.

15:26:28 25             What it says is you can use it -- again, which isn't

1  obtain, but you can use it, which doesn't match the criminal

2  statute.  You can use it for treatment purposes, but then a

3  bunch of other things, too, like administrative uses.  You can

4  use it to de-identify information.  So if you have information,

5  you can use it to de-identify it.  And then, once it's

6  de-identified, you can disclose it.

15:26:52  7      THE COURT:  All right.  You want to respond, please,

8  just briefly?  And then I'm going to -- I'll -- I'll come out,

9  and I'll give you some ruling after I take a short break because

10  you need this to move along one way or the other.

15:27:04 11      What's your position?  Just respond quickly.

15:27:06 12      MS. FEINSTEIN:  Sure.  I'll try and be very high

13  level, Your Honor.

15:27:09 14      THE COURT:  High level?  Everybody's at a high level.

15  Go on.

15:27:11 16      MS. FEINSTEIN:  I try to be.  You can get really in

17  the weeds with this.

15:27:14 18      THE COURT:  I'm counting myself in this.  Go on.

15:27:17 19      MS. FEINSTEIN:  I think they're basically trying to

20  substitute "access" for "authorization."  They're using a

21  Supreme Court case, *Van Buren,* that ruled on language, "exceeds

22  authorized access," that does not appear in HIPPA.  Van Buren is

23  inapplicable here.  Where it discusses "without authorization,"

24  it's indicta.  The *actus reus,* as outlined in the CFAA, is how

25  you access the computer system, which is completely different

1    than what HIPPA was focused on.

15:27:44  2            So we do not believe that any court would agree that

3    *Van Buren* would be applicable here in terms of --

15:27:53  4            **THE COURT:**  All right.  That's all I want to hear

5    right now.  I want to go on to one other short matter, and then

6    we'll take a short break and come back and rule and -- number

7    one, I was looking, in anticipation of trial, one of the -- one

8    of the items that you're asking for, you filed as a supplemental

9    motion in limine.  I'm referring to document 97 filed on 11/13.

10    It's a couple of days ago, and it's about -- about a video

11    that -- that the defendant appeared in.  And what is it that you

12    want me to get out of that?

15:28:34 13            I watched the -- I watched the one-minute excerpt, and

14    where does it go from here?

15:28:42 15            **MS. ANSARI:**  Yes, Your Honor.

15:28:42 16            **THE COURT:**  I mean, what does it -- and it's an hour

17    and a half that he gave this -- this -- what is it, this

18    interview, right, about the matters in this case?

15:28:54 19            **MS. ANSARI:**  That's correct, Your Honor.  We don't

20    want the whole video in --

15:28:56 21            **THE COURT:**  Yeah, I know.  You want one minute, but

22    for what purpose?  If you give me a hint, because I was looking

23    at it.  What is it you need that for?

15:29:03 24            **MS. ANSARI:**  Well, it goes not only to show his

25    identity, but it also goes to show what his intent was.  It goes

1   directly to his motive and intent, Your Honor.

15:29:12  2           THE COURT:  All right.  I looked at it.  By the way,

3   is there any other videos out there?

15:29:17  4           MS. ANSARI:  Well, there's a lot of videos online,

5   Your Honor, of the defendant --

15:29:21  6           THE COURT:  Oh, yeah?

15:29:21  7           MS. ANSARI:  -- but we don't anticipate using any

8   videos at this time, Your Honor.

15:29:25  9           THE COURT:  All right.  So you want just to use that

10   one minute?

15:29:27 11           MS. ANSARI:  That's correct.

15:29:28 12           THE COURT:  How about the rule of optional

13   completeness?

15:29:30 14           MS. ANSARI:  Well, we don't think that applies in this

15   case, Your Honor --

15:29:32 16           THE COURT:  Why not?

15:29:33 17           MS. ANSARI:  -- because it says in Rule 106 --

18   provides that: (Reading) If a party introduces all --

15:29:36 19           THE COURT:  Slow down.

15:29:37 20           MS. ANSARI:  (Reading) If a party introduces all or

21   part of a statement, an adverse party may require the

22   introduction at that time of any other part or any other

23   statement that, in fairness, ought to be considered at that

24   time.

15:29:48 25           It also requires an introduction of a writing or

1    recorded statement only when the omitted portion is necessary to

2    qualify, explain, or place into context the portion already

3    introduced.

15:29:59  4         **THE COURT:**  All right.  I understand it.  That comes

5    up all the time in criminal cases.

15:30:02  6         **MS. ANSARI:**  Right.  So we don't think that one minute

7    that we're putting in, we would need to put the whole hour,

8    Your Honor, to explain anything.  We think it's quite evident --

15:30:11  9         **THE COURT:**  What does -- I'll ask the defense in a

10   moment.  What does that free up the defense to do?  In other

11   words, they'd have -- they'd have to put that on in their part

12   of the case.  Is that your -- if they want the rest on to show

13   it's relevant?

15:30:24 14        **MS. ANSARI:**  Correct, Your Honor.

15:30:24 15        **THE COURT:**  Okay.

15:30:24 16        **MS. ANSARI:**  It's also hearsay if they put -- if they

17   put the video on for themselves, we believe that is hearsay; we

18   believe the defendant would have to testify.  But them just

19   putting a prerecorded statement --

15:30:35 20        **THE COURT:**  All right.  I'll rule on that and see what

21   the ruling is, and if you disagree with it, we certainly can

22   discuss it.

15:30:42 23        What else you want to talk about right now?  I'm going

24   to take a break and come back and rule where I have to.

15:30:45 25        Let me just ask you this -- and I'll rule on the

1    delay, 30 days or more, of when the trial -- it's set to go,

2    what, December -- what is it?

15:30:56   3              MR. PATRICK:  The 2nd.  We have our -- pretrial is

4    scheduled the Friday before Thanksgiving --

15:30:59   5              THE COURT:  The Friday before.

15:31:02   6              MR. PATRICK:  -- and then jury --

15:31:02   7              THE COURT:  No, again.  I don't mean this negative.

8    You're standing on that 30-day request?  I'll rule on it.

15:31:08   9              MR. PATRICK:  Right.

15:31:08  10              THE COURT:  I tell you what.  You want to think about

11   it?

15:31:12  12              MR. PATRICK:  Yes, sir.

15:31:13  13              THE COURT:  All right.  Hang on.  We're going to go

14   off the record.  Take your people in a corner and think about

15   it, all right?

15:31:20  16         (Discussion off record between defense counsel.)

15:31:58  17              THE COURT:  All right.  Back on the record, please.

15:31:59  18              Yes, sir?

15:32:00  19              MR. PATRICK:  Yes, sir.  We would still stand on that

20   30-day request; that this is not fixing a typo, but is more

21   material to that, and that's where we stand --

15:32:09  22              THE COURT:  And what's your response?  Short -- short

23   phraseology.

15:32:13  24              MS. ANSARI:  They have notice.  It's not prejudicial,

25   Your Honor.  They've even -- they sat on it for two months.

15:32:17  1    **THE COURT:**  Okay.  That's all I need, okay?  I'll come

2    back and rule on those main things, and then we'll see if we

3    need a conference next Friday.

15:32:28  4    **MR. PATRICK:**  Yes, sir.

15:32:28  5    **THE COURT:**  All right.  It's now 3:33.  I'm going to

6    excuse myself for a while because I may have to pull some cases,

7    okay?  We're going to get back in, and we'll wrap it up at

8    4:00 o'clock.  That's in 25 minutes.

15:32:39  9    **MR. PATRICK:**  Yes, sir.

15:32:40  10    **THE COURT:**  Okay.  We'll see you then.

15:32:41  11    **MR. PATRICK:**  And, Your Honor, I didn't say thank you

12    earlier for the consideration moving it to today.

15:32:45  13    *(Discussion off the record.)*

15:32:45  14    *(Recess taken from 3:32 p.m. to 4:00 p.m.)*

16:00:50  15    **THE COURT:**  All right.  Be seated.

16:00:55  16    All right.  Unless I call on you and ask -- I'm going

17    to ask, probably, for one -- one question.  I'm not taking any

18    more arguments nor making any more statements today on this

19    case.

16:01:07  20    I've actually went and dictated it out, and pardon me

21    for reading it, but I'm going to read it.

16:01:14  22    The government has stated that they will not be filing

23    a second superseding indictment and wish to proceed with the

24    superseding indictment in its current form.  Having considered

25    the defendant's motion, submissions, and arguments here today,

1    the Court hereby declines to strike the language, quote, and,

2    slash, or use, end quote, from Counts 2, 3, and 4 in the

3    superseding indictment.

16:01:44  4          Defense, what is your position now that the Court's

5    declined to strike the superseding indictment?  What is it,

6    Counsel?

16:01:55  7          **MR. PATRICK:**  We object to that.

16:01:57  8          **THE COURT:**  Object to what?  Did you hear what I said?

16:02:01  9          **MR. PATRICK:**  That you decline to strike it, yes, sir.

16:02:02  10         **THE COURT:**  Okay.  So what's your motion?

16:02:04  11         **MR. PATRICK:**  We move to dismiss, Your Honor.

16:02:06  12         **THE COURT:**  All right.  Have a seat.

16:02:07  13         **MR. PATRICK:**  Thank you.

16:02:11  14         **THE COURT:**  The Court now postpones the pretrial

15   conference and trial date.  An order will be signed shortly with

16   regards to the defendant's motion to dismiss the superseding

17   indictment.

16:02:20  18         Thank you for your effort.  We stand adjourned.

16:02:23  19      *(Proceedings concluded at 4:02 p.m.)*

20                           -o0o-

21          I certify that the foregoing is a correct transcript

22   from the record of proceedings in the above matter.

23

24   Date:  November 19, 2024

25                      */s/Heather Alcaraz*
                        Signature of Court Reporter